**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CAITLIN LEIGHTON,

Plaintiff,

v.

SALINE LECTRONICS, INC.,

Defendant.

Case No. 2:26-cv-12705

Hon.

---

Noah S. Hurwitz (P74063)
Kara F. Krause (P85487)
Hurwitz Law PLLC
Attorneys for Plaintiff
340 Beakes St., Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com
kara@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the complaint.

**COMPLAINT AND JURY DEMAND**

Plaintiff Caitlin Leighton ("Plaintiff"), by and through her attorneys, Hurwitz

Law PLLC, hereby alleges as follows:

**INTRODUCTION**

1.      Plaintiff was terminated just one week after submitting a formal written

complaint to Defendant's Vice President of Human Capital Carol Menuchi and

1

Human Resources Manager Jessica Holleman, in which she directly and explicitly raised concerns regarding gender-based discrimination.

2.     Plaintiff was replaced by an external male candidate, Jeremy Manning, who is compensated at a higher rate than her despite having fewer qualifications and less relevant experience for the position.

3.     Plaintiff hereby asserts claims of sex discrimination and retaliation in violation of the Equal Pay Act of 1963 ("EPA") and Michigan's Elliott-Larsen Civil Rights Act ("ELCRA").

4.     Plaintiff filed a charge of discrimination on July 9, 2026, and intends to amend this complaint when she receives her Notice of Right to Sue to include counts or discrimination and retaliation under Title VII of the Civil Rights Act of 1964.

## PARTIES AND JURISDICTION

5.     Plaintiff is a resident of Wayne County, Michigan.

6.     Defendant Saline Lectronics, Inc. is a domestic for-profit corporation that transacts business in Saline Township, Washtenaw County, Michigan.

7.     Federal question jurisdiction over claims under the Equal Pay Act of 1963, 29 U.S.C. § 206(d) is proper under 28 U.S.C. § 1331

8.     Supplemental jurisdiction over claims under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA") is proper under 28 U.S.C. § 1367

9.      Venue in this Court is proper in the Eastern District of Michigan pursuant to 28 U.S.C. §1391, as it is the district in which a substantial part of the events or omissions giving rise to the claim occurred.

## STATEMENT OF FACTS

10.     Plaintiff was hired as Defendant's Program Management Team Lead on August 12, 2024.

11.     Plaintiff always performed her duties and responsibilities diligently and to a high degree of satisfaction.

12.     Plaintiff had never received any formal discipline of any kind before her termination.

13.     Plaintiff brought fifteen years of professional experience to this role.

14.     Plaintiff's responsibilities and workload included:

   a.  Training and onboarding Defendant's Program Managers,
   b.  Managing and supporting at least four salaried Program Managers,
   c.  Managing payroll, expense reports, and time off approvals,
   d.  Leading production meetings and team meetings,
   e.  Leading three customer meetings four times per week,
   f.  Managing approximately ninety-four active customer quotes,
   g.  Developing training materials, videos, and support systems, and
   h.  Conducting escalation huddles and corrective action follow up.

15.     Plaintiff gave birth on July 23, 2025.

16.     Plaintiff returned from maternity leave two months later.

3

17. Plaintiff used to pump at work, but due to the workload and lack of reasonable breaks, she was forced to stop pumping at work altogether and could only do so in the morning and at night at home.

18. Plaintiff estimates that before her termination, she had not even taken a true lunch break in over six months.

## Defendant's Executive Restructuring

19. Defendant underwent a significant executive restructuring earlier this calendar year, and a male employee, Randy Ferrell, was promoted from Director of Engineering to Plant Manager.

20. Plaintiff warmly congratulated him on his new position before an in-person meeting in Saline, Michigan on January 22, 2026. Mr. Ferrell ignored her entirely, setting the tone for their working relationship.

21. Plaintiff's working environment deteriorated under his leadership.

22. Mr. Ferrell communication style was dismissive and they never had a single one-on-one meeting to discuss job expectations or priorities.

23. Plaintiff was excluded from leadership and staff meetings, hindering her ability to effectively perform her managerial responsibilities.

24. Plaintiff consistently raised legitimate concerns regarding staffing shortages, the resulting impact on customer service and employee burnout.

25. Mr. Ferrell responded by calling her "negative."

26. Plaintiff asked him for an update as far as hiring a Program Manager.

27. Mr. Ferrell abruptly responded that it was "not going to happen."

28. Plaintiff's concerns were made in good faith and were directed toward improving workplace operations and addressing ongoing business needs.

29. Plaintiff consistently sought guidance and support from Mr. Ferrell.

30. Mr. Ferrell frequently declined to become involved.

31. Mr. Ferrell failed to provide meaningful leadership support when it was most needed.

32. Plaintiff routinely left work feeling overwhelmed and stressed.

33. Mr. Ferrell's treatment of her was part of a broader pattern directed at female employees.

34. Plaintiff in particular observed tension between Mr. Ferrell and another female employee, Director of Global Strategic Accounts Meghan Heath.

35. Defendant implemented pricing increases, and a female employee, Program Manager Megan DeWolf, requested Mr. Ferrell's assistance in presenting the updated pricing to the customer. Mr. Ferrell declined to participate.

36. The customer subsequently escalated its concerns to Defendant's Chief Revenue Officer Jason Sciberras.

37. Plaintiff regularly advocated for female employees who demonstrated exceptional performance and made significant contributions.

5

38.     Plaintiff received little, if any, recognition or encouragement from Mr. Ferrell.

39.     Plaintiff requested modest gift cards to recognize female employees, including Gwen Rylander, Rachael Fitzmaurice, and Ms. DeWolf, for exceptional performance and contributions.

40.     Mr. Ferrell extensively questioned the need for such recognition.

### Plaintiff's Complaint

41.     Plaintiff submitted a formal written complaint by email on May 26, 2026 to Defendant's Vice President of Human Capital Carol Menuchi and Human Resources Manager Jessica Holleman, in which she directly and explicitly raised concerns regarding gender-based discrimination.

42.     This was the first such complaint she submitted in her career.

43.     Plaintiff confided in a current female employee regarding her concerns.

44.     That employee was supportive of submitting the complaint.

45.     Plaintiff wrote, in relevant part:

> I am formally raising concerns regarding workplace culture, leadership practices, communication, operational support, and specifically the management style and conduct of my direct supervisor, Randy . . . I know I am not the only female employee who feels unheard, unsupported, undervalued, or not taken seriously within the current leadership environment. The shift in company culture and leadership dynamics over the past two years has been noticeable, including the significantly lower visibility of women in leadership roles.

46.     Plaintiff also complained about the lack of meaningful encouragement or support, and remarked that personnel changes happened without her input, including the sudden termination of another employee without any replacement strategy or transition plan.

47.     Plaintiff further remarked that a female employee, Defendant's Program Manager Jenna Garland, resigned due to stress.

48.     Ms. Menuchi acknowledged receipt of the complaint and stated she would follow up. However, no substantive response was ever provided.

### Plaintiff's Termination

49.     Plaintiff was called into a meeting and informed that she was laid off approximately one week after submitting the complaint.

50.     Defendant attributed the termination to "business decisions."

51.     Plaintiff asked for clarification, but none was provided.

52.     Plaintiff had no disciplinary history.

53.     Defendant posted her exact job title and description on June 3, 2026, the day after her termination.

54.     Any claim that the termination was solely a "business decision" or a business necessity is a pretext for discrimination.

7

55.     Defendant's Assistant Program Manager Jesse Miller resigned within one week after her termination, stating in a text message in relevant part: "That was the final straw. I hated the way they gave you no opportunity or real warning."

56.     Defendant's Program Manager Michelle Wong applied for her job internally and they never gave her a chance to interview.

57.     Ms. Wong subsequently resigned, upon information and belief.

58.     Defendant hired an external male candidate instead, Jeremy Manning, for the same or substantially similar position, upon information and belief.

59.     Mr. Manning was offered $130,000, upon information and belief.

60.     Plaintiff was initially compensated at $100,000 and, after two annual three percent (3%) increases, her compensation was $106,000.

61.     Mr. Manning is compensated at a higher rate than her despite having fewer qualifications and less relevant experience for the position.

62.     Mr. Manning has no prior experience in Printed Circuit Board Assembly ("PCBA") manufacturing.

**COUNT I**
**<u>VIOLATION OF THE EQUAL PAY ACT OF 1963</u>**
**29 U.S.C. § 206**

63.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

64.    Defendant is an "employer" within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203(d).

65.    Plaintiff was an "employee" within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203(e).

66.    No employer shall discriminate between employees "on the basis of sex" by paying wages to employees at a rate less than the rate at which he pays wages to employees of the opposite sex. 29 U.S.C. § 206(d).

67.    Plaintiff is a woman and a member of a protected class.

68.    Plaintiff was terminated.

69.    Defendant posted her exact job title and description on June 3, 2026, the day after her termination.

70.    Defendant hired an external male candidate, Mr. Manning, for the same or substantially similar position, upon information and belief.

71.    Mr. Manning was offered $130,000, upon information and belief.

72.    Plaintiff was initially compensated at $100,000 and, after two annual three percent (3%) increases, her compensation was $106,000.

73.    Mr. Manning is compensated at a higher rate than her despite having fewer qualifications and less relevant experience for the position.

74.    Mr. Manning has no prior experience in Printed Circuit Board Assembly ("PCBA") manufacturing.

75. Defendant's payments are not made pursuant to a seniority system, a merit system, a system that measures earnings by quantity or quality of production, or a differential based on any factor other than sex.

76. Defendant pays Mr. Manning, an employee of the opposite sex, at a higher rate for equal work on jobs that require equal skill, effort, and responsibility and that are performed under similar working conditions.

77. Mr. Manning performs "equal work" within the meaning of 29 U.S.C. § 206(d).

78. Defendant's conduct is intentional.

79. Defendant's conduct is done with malice or reckless indifference.

80. Plaintiff was harmed, and continues to be harmed, in that she has suffered economic loss, including backpay.

81. Plaintiff also claims liquidated damages pursuant to 29 U.S.C. § 260.

**COUNT II**
**SEX DISCRIMINATION IN VIOLATION OF THE ELCRA**
**Mich. Comp. Laws § 37.2202**

82. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

83. Defendant is an employer within the meaning of Mich. Comp. Laws § 37.2201(a).

84. An employer shall not "discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . sex." *Id.* at 37.2202(1).

85. "Sex" is defined to include "pregnancy." *Id.* at 37.2201(d).

86. Plaintiff is a woman and a member of a protected class.

87. Plaintiff gave birth on July 23, 2025.

88. Plaintiff returned from maternity leave two months later.

89. Plaintiff was qualified for her position.

90. Plaintiff had never received any formal discipline of any kind before her termination.

91. Plaintiff met or exceeded all legitimate job expectations.

92. Plaintiff was excluded from leadership and staff meetings, hindering her ability to effectively perform her managerial responsibilities.

93. Mr. Ferrell communication style was dismissive and they never had a single one-on-one meeting to discuss job expectations or priorities.

94. Mr. Ferrell's treatment of her was part of a broader pattern directed at female employees, including Ms. Heath and Ms. DeWolf.

95. A female employee, Ms. Garland, resigned due to stress.

96. Plaintiff was terminated.

97. Plaintiff thereby suffered adverse employment action.

11

98. Defendant's alleged termination reason is a pretext.

99. Defendant attributed the termination to "business decisions."

100. Plaintiff did nothing to deserve or warrant immediate termination.

101. Plaintiff was treated less favorably than male employees.

102. Plaintiff was discriminated against because of her sex.

103. Plaintiff's termination was part of a broader pattern of discrimination.

104. Defendant then posted her exact job title and description on June 3, 2026, the day after her termination.

105. Ms. Wong, an internal candidate, applied for her job internally and they never gave her a chance to interview.

106. Defendant hired an unqualified male instead.

107. Ms. Wong subsequently resigned, upon information and belief.

108. Defendant's conduct was intentional.

109. Defendant's conduct was done with malice or reckless indifference.

110. Plaintiff was harmed, and continues to be harmed, in that she has suffered economic and non-economic loss, including but not limited to: lost wages, damages to professional reputation, emotional and physical distress, anguish, embarrassment, outrage, humiliation, indignity, and disappointment.

## COUNT III
## <u>RETALIATION IN VIOLATION OF THE ELCRA</u>
**Mich. Comp. Laws § 37.2701**

12

111.   Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

112.   Defendant is an employer within the meaning of Mich. Comp. Laws § 37.2201(a).

113.   Plaintiff submitted a formal written complaint by email on May 26, 2026 to Ms. Menuchi and Ms. Holleman, in which she directly and explicitly raised concerns regarding gender-based discrimination.

114.   Plaintiff thereby engaged in protected activity.

115.   Ms. Menuchi acknowledged receipt of the complaint and stated she would follow up. However, no substantive response was ever provided.

116.   Plaintiff was terminated on June 2, 2026.

117.   Plaintiff thereby suffered adverse employment action.

118.   A causal connection existed between the protected activity and the adverse employment action.

119.   The temporal proximity between the two is extraordinarily close: just one week elapsed between the two events.

120.   Plaintiff had never received any formal discipline of any kind before her termination.

121.   Defendant's alleged termination reason is a pretext.

122.   Plaintiff did nothing to deserve or warrant immediate termination.

123. Defendant's conduct was intentional.

124. Defendant's conduct was done with malice or reckless indifference.

125. Plaintiff was harmed, and continues to be harmed, in that she has suffered economic and non-economic loss, including but not limited to: lost wages, damages to professional reputation, emotional and physical distress, anguish, embarrassment, outrage, humiliation, indignity, and disappointment.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff claims as follows:

A.   Declaratory judgment;
B.   All costs and reasonable attorney's fees;
C.   Compensatory damages and exemplary damages;
D.   Liquidated damages;
E.   Punitive damages;
F.   Prejudgment interest; and
G.   All further relief as in law or equity may pertain.

Respectfully Submitted,

HURWITZ LAW PLLC

/s/ Kara F. Krause
Kara F. Krause (P85487)
Noah S. Hurwitz (P74063)
Attorney for Plaintiff
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
noah@hurwitzlaw.com
kara@hurwitzlaw.com

Dated: August 5, 2026

14

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CAITLIN LEIGHTON,                                    Case No. 2:26-cv-12705

     Plaintiff,

v.                                                                          Hon.

SALINE LECTRONICS, INC.,

     Defendant.

---

Noah S. Hurwitz (P74063)
Kara F. Krause (P85487)
Hurwitz Law PLLC
Attorneys for Plaintiff
340 Beakes St., Suite 125
Ann Arbor, MI 48103
(844) 487-9489
noah@hurwitzlaw.com
kara@hurwitzlaw.com

---

## **JURY DEMAND**

Plaintiff Caitlin Leighton, by and through her attorneys, Hurwitz Law PLLC,

hereby demand a jury trial in the above-captioned matter for all issues so triable.

Respectfully Submitted,

HURWITZ LAW PLLC

*/s/ Kara F. Krause*
Kara F. Krause (P85487)
Noah S. Hurwitz (P74063)
Attorney for Plaintiff

Dated: August 5, 2026

15